IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

JOYCE A. SHANK-HAGGERT,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:15-cv-04135-JEH

**Order and Opinion**

Now before the Court are the Plaintiff, Joyce A. Shank-Haggert's, Motion for Summary Judgment (D. 17)[1] and the Commissioner's Motion for Summary Affirmance (D. 20). The parties provided supporting Memoranda thereto. (D. 17-1; 21). For the reasons set forth, *infra*, this Court REVERSES the Commissioner's Decision, GRANTS the Plaintiff's Motion for Summary Judgment (D. 17), DENIES the Commissioner's Motion for Summary Affirmance (D. 20), and REMANDS for further proceedings consistent with this Order and Opinion.[2]

**I**

In January 2010, the Plaintiff filed her initial application for benefits. Her husband died in January 2011. Ultimately, she applied for Disability Insurance Benefits (DIB), Supplemental Social Security Income (SSI), and Widow's Insurance Benefits (WIB), alleging disability beginning on September 7, 2009. Her claims were denied initially and upon reconsideration. The Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared before ALJ Timothy

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The undersigned presides over this case with the consent of all parties. (D. 14).

Snelling. ALJ Snelling issued an unfavorable decision. Pursuant to a request for review, the Appeals Council remanded the Plaintiff's case.

At a second hearing via video in February 2014 before ALJ Shreese Wilson, the Plaintiff appeared with counsel. Later that month, ALJ Wilson issued a decision concluding that the Plaintiff was not disabled. (D. 10 at pp. 167-178). The Appeals Council denied the Plaintiff's request for review, making ALJ Wilson's Decision the final decision of the Commissioner. 20 C.F.R. § 404.981. The Plaintiff filed the instant civil action, seeking review of ALJ Wilson's Decision pursuant to 42 U.S.C. § 405(g) in September 2015. (D. 1).

## II

At the time the Plaintiff applied for benefits, she was 55 years old. She was living in a home in Empire, California, but now lives in Rock Island, Illinois. The Plaintiff is a high school graduate. She has not worked fulltime since 2008. On the various SSA forms she submitted, the Plaintiff indicated that she has disabling osteoarthrosis with allied disorders and fibromyalgia.

At the most recent hearing before ALJ Wilson, the Plaintiff testified that while she was initially overweight when she filed her applications, she had since lost approximately 40 pounds by eating healthy and trying to walk 30 minutes per day. The Plaintiff also said she can drive for approximately one hour before pain in her knee starts bothering her.

At the hearing, the Plaintiff said she has not worked since December 17th, 2013. In the last 15 years, she has worked fulltime as a manicurist and sales associate in a salon, an assistant activities director, and as a teacher's aide in preschools. While working in the salon, the heaviest thing the Plaintiff had to lift were her clients' feet. She said she quit that job due to tendinitis.

The first position the Plaintiff held as a teacher's aide was temporary, but she also said she was physically unable to work in that position fulltime. She quit

the second teaching position she had because she was physically incapable of doing the work any longer. The Plaintiff then became an assistant activities director at an assisted living facility. While working in this position she suffered a soft tissue injury in an accident where she fell. After that, she says her doctor prohibited her from lifting anything over 25 pounds but neglected to document the restriction. As a result, she continued lifting things at work over 25 pounds and her physical condition deteriorated. She testified that her lifting duties consisted of pushing the residents in their wheelchairs. The Plaintiff quit that job shortly after a new management team took over at the facility.

Since September 2009, the date of her alleged onset of disability, the Plaintiff has also worked a few different temporary part time jobs. First she worked as a substitute preschool teacher's aide for three to four months, at times for 40 hours a week. She did not need to lift any weight as part of her duties, but she did spend a substantial amount of time on her feet. Her employment ended there because they did not need her services any longer. The Plaintiff has also worked as a preschool teacher's aide for the YWCA from 2012 to 2013 on an as needed basis, averaging around three days per week, sometimes more. Her shifts were as long as eight hours a day. She had an assistant with her in the room and did not need to do any heavy lifting.

The Plaintiff is still on a list to be called if the YWCA needs her help in that position. She claims that she cannot work a fulltime job any longer because she is physically, mentally, and emotionally incapable. After a few hours of work she is prone to dropping things, her knees and back give out on her, and she starts to forget important things.

The Plaintiff lives alone in an efficiency apartment. She is able to do all of her own cooking, cleaning, and grocery shopping. When grocery shopping, she typically utilizes a motorized scooter. She reads regularly and has even

volunteered to help with a Christmas pageant in a retirement home across the street from her house.

The Plaintiff sees her treating physician continually to address her fibromyalgia and arthritis. These conditions cause her pain. The Plaintiff also said she has sleep apnea. She normally treats the condition with a CPAP machine, but that was broken at the time of the hearing. She takes Cymbalta to treat her pain, alleviate her depression, and help her sleep.

Vocational Expert, Dennis Brian Paprocki, also testified at the Plaintiff's hearing. Upon questioning from the ALJ, Paprocki confirmed that someone in the Plaintiff's position could engage in the Plaintiff's past work as a preschool teacher's aide and an assistant activities director, even if they were confined to the following limitations: lifting no more than 40 pounds occasionally and up to 25 pounds frequently; sitting, standing, or walking up to six hours in an eight hour work day; only occasionally climbing ladders, ropes, or scaffolds; no more than frequently climbing ramps or stairs, stooping, kneeling, or reaching overhead bilaterally; having moderate limitations with concentration, persistence, and pace when attempting to complete tasks; no jobs that require complex job processes; and no more than frequent interaction with the general public. He said that the Plaintiff would not be able to perform her past work in the salon within these restrictions.

Paprocki based his assessment on how the Plaintiff actually performed her past jobs, not necessarily how they are typically performed in the national economy. He claimed she could perform the first job she had as a preschool teacher as it is typically done in the national economy since it is light work and the limitations noted above by the ALJ constitute almost the full range of medium work. Paprocki also said that the Plaintiff's position as an assistant activities director could be performed either as she had done so or as it is done in the

national economy. He considered the job, as she performed it, to be lighter than it was performed nationally.

As the ALJ refined his hypothetical questioning, limiting someone in the same position as the Plaintiff with the limitations noted above and incorporating an additional requirement to entirely avoid temperatures lower than 50 degrees Fahrenheit, Popracki said the subject could not perform any of the Plaintiff's past work. This was primarily due to her location in Illinois, where it is simply unfeasible to avoid such temperatures.

Popracki also testified that someone with the Plaintiff's past work experience would not have any skills that would transfer to other light or sedentary jobs within the original limitations proposed. When the ALJ amended the original scenario and limited the worker to no more than two hours of standing and walking within an eight hour day, Popracki said someone of the Plaintiff's stature would not be able to perform her past relevant work. Popracki affirmed that his testimony was consistent with the information found in the Dictionary of Occupational Titles (DOT). In closing, Plaintiff's counsel requested that the ALJ take special note of the weight restrictions imposed on the Plaintiff at three specific consultative exams found in specific exhibits.

### III

In her Decision, the ALJ determined that the Plaintiff had the severe impairments of osteoarthritis, fibromyalgia, obesity, adjustment disorder, anxiety, hypertension, sleep apnea, and headaches. (20 CFR 404.1520(c) and 416.920(c)). (D. 10 at pg. 170). She further determined, however, that the Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." *Id.*

The ALJ analyzed the Plaintiff's medical records, including her visits to mental health professionals. *Id.* at pp. 170-74. Regarding the latter, she found that while the Plaintiff did suffer from some mental impairments, when "considered singly and in combination," they did not "meet or medically equal the criteria of listings 12.04 and 12.06." *Id.* at pg. 171.

Regarding the Plaintiff's physical ailments, the ALJ stated:

> The medical evidence shows that the claimant has been treated conservatively for arthritis and allied disorders including fibromyalgia with some left wrist pain and decreased range of motion. However, radiographic imaging revealed only age-related degenerative changes of the wrist. Left wrist problems were related to an injury and in December 2011, she was diagnosed with fibromyalgia. This was reported to be stable by January 12, 2012. The claimant had some discomfort with motion or pressure when examined in September 2013, but sensation was intact and the claimant had full range of motion. Symptoms of fibromyalgia appear to be improved by May 2013.

*Id.* at pg. 172 (citations to the record omitted). The ALJ later noted that in September 2010, the Plaintiff "was assessed to be able to sit without limitation and stand and walk for a total of six hours per work day… …and was qualified to carry and lift up to 40 pounds occasionally and 20 pounds frequently." *Id.* She detailed the findings of another physical exam in November 2013—while the Plaintiff was working as a substitute teacher—where the Plaintiff was found to have sufficient mobility in a variety of physical assessments and professed that she was capable of lifting up to 35 pounds. *Id.* The ALJ pointed out that in spite of the doctor's assessment, he went on to find the Plaintiff was "incapable of standing or walking for more than 30 minutes at one time or for more than two hours per work day." *Id.* at pg. 173. She noted, however, that the doctor's finding was based solely on the Plaintiff's "complaints of low back pain, hip pain, and knee pain, although no joint abnormalities were discovered upon examination[.]" *Id.*

The Plaintiff was diagnosed with osteoarthritis, which she claims, along with fibromyalgia, cause her pain and tenderness. In the course of her Decision, the ALJ noted that the Plaintiff's blood pressure was normalized by 2013, her obesity issues were addressed by diet and exercise, and while a doctor advised the Plaintiff to use a CPAP machine, she had not followed up with the treatment. Ultimately, the ALJ found that the Plaintiff's "impairments, even when combined, do not meet or equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulations No. 4." *Id.* at pg. 174.

> The ALJ crafted the following Residual Functional Capacity for the Plaintiff:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional climbing ladders, ropes, and stairs; she is limited to frequent stooping, kneeling, crouching, and climbing ramps or stairs[;] she is able to reach overhead bilaterally no more than frequently; she is limited to frequent handling and fingering bilaterally; she must avoid concentrated exposure to unprotected heights and hazardous machinery; she is limited to jobs that do not require complex or detailed job processes and have little [in] the way of change in job process from day-to-day; and, she is limited to no more than frequent contact with the general public.

*Id.* In reaching this finding, the ALJ considered all of the Plaintiff's testimony and the evidence from medical records documenting her symptoms, "in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSR's 96-2p, 96-5p, 96-6p and 06-3p." *Id.*

Following protocol, the ALJ determined there were medical impairments reasonably expected to produce the Plaintiff's symptoms. She further found, however, that in evaluating the intensity, persistence, and limiting effects of the Plaintiff's symptoms, they were "not entirely credible" in part, because "the record does not include objective medical evidence that confirms that the claimant is

7

disabled, as alleged." *Id.* The ALJ also emphasized that "the record does not include objective findings that demonstrate that [the Plaintiff] is unable to perform at least simple work. The objective medical evidence does not support the claimant's allegation of complete and total disability." *Id.* at pg. 175. The ALJ went on to support these assertions by citing instances memorialized in the Plaintiff's medical records. In doing so, she further detailed how the Plaintiff's own description of her daily activities contradicted her allegation of complete and total disability.

The ALJ found that the RFC she crafted was generally consistent with the medical evidence, specifically with the examinations by the Plaintiff's providers and the state agency reviewing physicians. She adjusted the RFC to account for documented changes in the Plaintiff's condition. For example, although the Plaintiff was deemed capable of lifting 40 pounds in 2010, she testified at her hearing that she could only lift 35 pounds. *Id.* The ALJ adjusted the RFC accordingly.

In spite of her impairments, the ALJ found that the Plaintiff was capable of performing a wide range of light duty work. She specifically stated that the Plaintiff could perform her past relevant work as an assistant activities director because the "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at pg. 177. Based on the fact that Popracki opined that someone in the Plaintiff's condition would be capable of performing the Plaintiff's past work in this position—the way she actually performed it—the ALJ found that the Plaintiff could still perform the duties since none of the work activities were precluded by the RFC. *Id.* The ALJ explicitly rejected the "additional limitations posited by the claimant's representative[,]" finding they were "not supported by credible evidence[.]" *Id.* The ALJ ultimately found that the Plaintiff was not disabled.

8

## IV

The Plaintiff argues that the ALJ erred in: (1) failing to comply with the remand order; (2) assessing her subjective symptoms and RFC; and (3) in failing to consider whether she could perform her past work.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1)   currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)   suffers from an impairment that is severe or whether a combination of her impairments is severe;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)   is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)   is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. "A negative answer at any point, other than at step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled." *Garfield v. Schweiker*, 732 F.2d 605, 607 fn. 2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. In the instant case, the Plaintiff claims the ALJ erred at, *inter alia*, Step Four.

### A

First, the Plaintiff argues the ALJ erred by failing to comply with the Appeals Council's remand order. (D. 17-1 at pg. 4). More specifically, she asserts that "[t]he ALJ completely ignored objective evidence in the file of [her] diagnosis of borderline intellectual functioning." *Id.* at pg. 5. The evidence the Plaintiff refers to is two pages in the record from an examination by psychologist Phillip Cushman, Ph.D., where she was "placed" in the borderline range of intellectual functioning and diagnosed with the same. *Id.* The Commissioner contends that

the ALJ properly assessed the evidence of borderline intellectual functioning and the corresponding functional limitations endorsed by Cushman. (D. 21 at pp. 3-5).

At issue is Cushman's psychological evaluation of the Plaintiff from August of 2010. (D. 10-1 at pp. 281-86). In that report, Cushman shared his findings after assessing the Plaintiff during one visit. He did find that the Plaintiff's intellectual functioning was in the "borderline mentally deficient range." *Id.* at pg. 284. His ultimate conclusion, however, was that while the Plaintiff had some psychological difficulties, she could return to work if the job were not complex. He made the following observations in concluding his report:

> As a result of the above diagnoses, Joyce Shank does not appear capable of performing any detailed or complex tasks in a work setting. She does appear capable of performing some simple and repetitive tasks in a work setting and would like to do so at this time. She does appear capable of independently regularly attending and consistently participating in a work setting. She does appear capable of working a normal work week, if given the opportunity. Special or additional supervision may be needed in helping her with some reading, writing, and arithmetic. She may also need some extra repetitions when trying to teach her a new task. She may also need some assistance in managing interpersonal relationships in the work setting. She does appear capable of following simple verbal instructions from supervisors, but not complex instructions. She does appear capable of getting along with supervisors, coworkers, and the general public, but has a tendency to "rub people the wrong way." She does appear capable of dealing with the usual stressors encountered in a competitive work environment.

*Id.* at pg. 285.

There is nothing in Cushman's assessment that the ALJ did not address in formulating the Plaintiff's RFC. The Plaintiff has not put forth sufficient evidence to support her claim that the ALJ ignored Cushman's diagnosis. On the contrary, the record positively demonstrates that the ALJ accounted for Cushman's findings

by limiting the Plaintiff to simple routine work with restricted interaction with the public. (D. 10 at pg. 174). Thus, the Court rejects the Plaintiff's claim that the ALJ ignored Cushman's psychological evaluation.

### B

Next, the Plaintiff argues the ALJ erred in failing to consider the proper factors when assessing her subjective symptoms and RFC. (D. 17-1 at pp. 5-9). She ultimately asserts that the ALJ failed to note that her "activities are sporadic, performed on her own schedule, and are punctuated by rest. By misconstruing the evidence, the ALJ has improperly equated minimal daily activities with the ability to perform fulltime work." *Id.* at pg. 9. She cites *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) in support of her assertion. The Commissioner argues in response that the ALJ's assessment of the Plaintiff's credibility was not patently wrong, and therefore her Decision should be affirmed. (D. 21 at pg. 5-9).

Conflating daily living activities with the activities of a fulltime job is prohibited. *Bjornson*, 671 F.3d at 647. The ALJ in this case, however, did not equate the Plaintiff's testimony that she could dress and bathe herself with an ability to work fulltime. *Cf. id.* Rather, the ALJ found that the Plaintiff's testimony that she could do a range of other activities—including part time work—coupled with the fact that she found the Plaintiff's subjective complaints of pain and immobility less than credible, demonstrated that the Plaintiff was not disabled. The list of activities the Plaintiff engaged in that the ALJ referenced in this case was far more comprehensive than that which the ALJ utilized in *Bjornson*. The ALJ in the case before this Court found that the Plaintiff's current activities, while difficult for her, demonstrated that she could work fulltime, subject to the conditions in her RFC. Given the record before the Court, this appears to be a reasonable finding.

Additionally, any credibility determinations the ALJ made will not be overturned unless the findings are patently wrong. *Shideler v. Astrue*, 688 F.3d 306,

310-11 (7th Cir. 2012). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."[3] An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Just as the Court cannot re-weigh the medical evidence of record and resolve conflicts in the record, nor can the Court make its own credibility finding. "When assessing an ALJ's credibility determination, [the court does] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examines whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). It is only when an ALJ's determination lacks any explanation or support that it is "patently wrong." *Id*. at 413-14.

As detailed previously, the ALJ noted reasons why she found the Plaintiff's testimony regarding her limited functional capacity inconsistent with the record. (D. 10 at pp. 174-77). In addition to referencing the lack of objective medical evidence regarding the Plaintiff's pain and professed immobility, the ALJ discussed the Plaintiff's testimony about her activities during the relevant timeframe. She also detailed how her RFC was consistent with the Plaintiff's medical records. The ALJ concluded that within the confines of the RFC she

---

[3] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016. The operative language the Court quotes here from SSR 96-7p, however, appears in SSR 16-3p verbatim. By either standard, the Court's analysis remains the same.

formulated, the Plaintiff "is otherwise capable of performing and sustaining the activities of work." *Id.* at pg. 177.

Thus, the Court finds that the ALJ included specific reasons for her finding of inconsistency, supported by evidence in the record. The ALJ confronted the objective medical evidence of the Plaintiff's impairments, her daily activities, and her treatment. In so doing, the ALJ provided enough clarity and detail to permit meaningful review. The ALJ considered the contrary evidence and explained why she rejected it. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record").

Having provided specific reasons for her finding and laying out her rationale for concluding that the Plaintiff's impairments did not preclude her from engaging in light work, the ALJ's Decision rests upon a solid foundation. This base includes reference to the Plaintiff's own testimony and results from objective medical tests and a psychological evaluation. The ALJ made her finding only after she detailed much of the testimony and evidence referenced earlier in her Decision. Her credibility determination was grounded upon observations that were both reasonable and supported in the record. *Sims v. Barnhart*, 442 F3d 536, 538 (7th Cir. 2006). The ALJ's findings are not patently wrong. *Skarbek v Barnhart*, 390 F3d 500, 504-05 (7th Cir 2004). Therefore, the Plaintiff's claim on this issue fails on the merits.

## C

Lastly, the Plaintiff argues that the ALJ erred in failing to properly consider whether she could perform her past work. (D. 17-1 at pp. 9-10). The crux of her argument is the assertion that the ALJ failed to list the physical requirements of her past job as an assistant activities director and carefully compare said requirements to her functional limitations. In response, the Commissioner

concedes error on the ALJ's part, but argues that harmless error applies and the substantial evidence still supports the ALJ's finding. (D. 21 at pp. 9-13).

Indeed, in order to determine whether a claimant is "physically capable of returning to her former work, the administrative law judge obviously must ascertain the demands of that work in relation to the claimant's present physical capabilities[.]" *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984) (citing 20 C.F.R. § 404.1520(e); *Mental Health Ass'n v. Heckler*, 720 F.2d 965, 968 (8th Cir. 1983); *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983)). In this instance, the ALJ failed to compare the Plaintiff's physical abilities with the demands of the past relevant work at issue. In neglecting to make this comparison, the ALJ wrote a Decision that is inconsistent. The ALJ's finding does not account for the fact that the past relevant work at issue required the Plaintiff to lift more than 25 pounds frequently, in violation of the RFC she formulated which forbids the Plaintiff from lifting more than 20 pounds.

The undisputed evidence, by the Plaintiff, is that the job of assistant activities director required her to lift more than 25 pounds. In spite of this, the ALJ found that the Plaintiff maintained the ability to perform light work, as it is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some additional restrictions. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967. As such, the ALJ's finding is erroneous.

The ALJ found that the Plaintiff was not disabled based upon the assumption that she could perform the job of assistant activities director as she actually performed it. In this position, however, the Plaintiff testified that she lifted over 25 pounds in the course of her duties. At face value, the Plaintiff would be in violation of the ALJ's RFC if she performed the job. C.F.R. §§ 404.1567(b) and 416.967(b) prohibit claimants from lifting more than 20 pounds.

The Commissioner argues this is harmless error because the DOT "makes clear" that the Plaintiff could still perform the job "as generally performed, which is a valid basis for a step four finding." (D. 21 at pg. 11) (citing 20 C.F.R. §§ 404.1560(b)(2)-(3), 416.960(b)(2)-(3). This logic is unpersuasive. Nothing in the regulations cited supports this assertion. Had the ALJ gone on to find that the Plaintiff was capable of performing other jobs as they exist in the national economy, with supporting Vocational Expert testimony, the error may have been harmless, but that did not happen here.

On remand, the ALJ is directed to (1) ascertain the demands of the Plaintiff's prior work, (2) compare those demands to the RFC formulated, (3) make a decision about whether the Plaintiff is capable of performing her past relevant work, and (4) if need be, determine if the Plaintiff is capable of performing any other work existing in significant numbers in the national economy.

## V

For the reasons set forth, *infra*, this Court REVERSES the Commissioner's decision, GRANTS the Plaintiff's Motion for Summary Judgment (D. 17), DENIES the Commissioner's Motion for Summary Affirmance (D. 20), and REMANDS to the Commissioner for a new hearing pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on July 26, 2017.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE